VICKSBURG FIREFIGHTERS ASSOCI-ATION, LOCAL 1686 INTERNATION-AL ASSOCIATION OF FIREFIGHT-ERS, AFL–CIO, CLC, et al., Plaintiffs-Appellants,

v.

CITY OF VICKSBURG, MISSISSIPPI, etc. et al., Defendants-Appellees.

No. 84–4126.

United States Court of Appeals, Fifth Circuit.

May 31, 1985.

John L. Quinn, Jackson, Miss., for plaintiffs-appellants.

John L. Maxey, II, Jackson, Miss., for Vicksburg Firefighters.

J. Stanford Terry, Edley H. Jones, Jr., Vicksburg, Miss., for defendants-appellees.

Before RUBIN, RANDALL and HIGGINBOTHAM, Circuit Judges.

RANDALL, Circuit Judge:

In this civil rights case, plaintiffs seek, *inter alia,* to enjoin the City of Vicksburg, Mississippi, from giving force and effect to a municipal resolution prohibiting captains of the Vicksburg Fire Department from belonging to a union or labor organization having in its membership rank-and-file firefighters of that department. The district court refused to issue the injunction on the ground that captains in the Vicksburg Fire Department are supervisors with interests adverse to those of the lesser-ranked firefighters and that therefore the prohibition against membership in a union represent-

ing the rank and file was a valid limitation on the exercise of the captains' first amendment rights. Finding ourselves in substantial agreement with the district court, we affirm.

## I.

■ The Vicksburg Firefighters Association, Local 1686 is a voluntary unincorporated labor organization affiliated with the International Association of Firefighters, AFL–CIO, CLC. While the membership of Local 1686 is comprised mostly of firefighters holding the rank of private or lieutenant, since the organization's inception captains in the Vicksburg Fire Department have been allowed to join and become officers. The purpose of Local 1686 is to assist its members to work collectively for their mutual benefit and protection and to engage in legislative lobbying activities to promote the employment-related interests of its members. In addition, Local 1686 over the years has held fire safety programs for the citizens of Vicksburg, sponsored training programs for its members to enhance fire safety and performance, and raised funds for the Muscular Dystrophy Association and the Mississippi Burn Center. The City of Vicksburg is under no obligation to recognize Local 1686 as a collective bargaining representative[1] and has not done so. Nor has the City signed a collective bargaining agreement with any other organization of firefighters or even engaged in any collective bargaining with its firefighters.

It is undisputed that the Vicksburg Fire Department has generally functioned well and has enjoyed good relations between superior officers and their subordinates. Since the creation of Local 1686 in 1967, there have been no strikes or work stoppages. In September of 1978 and September of 1980, however, off-duty members of Local 1686 engaged in informational picketing in an effort to gain public support for a wage increase. Approximately ten captains were members of Local 1686 at the time of the picketing.

On April 19, 1982, the Mayor and Board of Aldermen of the City of Vicksburg adopted the following resolution:

WHEREAS, it has come to the attention of the Mayor and Board of Aldermen that some of the captains in the City Fire Department are members of Local 1686, International Association of Firefighters, AFL–CIO and CIC; and

WHEREAS, the captains in the Fire Department are in supervisory positions and exercise supervision over the other members of the Fire Department at various stations and on various shifts; and,

WHEREAS, under the National Labor Relations Act, employers are not compelled to regard supervisors as employees for purposes of collective bargaining, and under the Taft-Hartly Act, a policy is expressed that supervisory membership in rank and file unions is inimical to efficiency; and,

WHEREAS, although the National Labor Relations Act and the Taft-Hartley Act do not apply to public employers, the Mayor and Board of Aldermen believe that the policies established by these Acts are the proper policies for the City to follow and believes [sic] that captains by virtue of their supervisory responsibilities, should have complete and undivided loyalty to the Fire Department and, therefore, should not be members of a union or labor organization having as members those fire fighters whom said captains are employed to supervise.

NOW, THEREFORE, BE IT RESOLVED by the Mayor and Board of Aldermen of the City of Vicksburg, that it is hereby accepted as the policy of said City that individuals occupying the position of captain in the Vicksburg Fire Department will not be permitted to belong to a union or labor organization having as members rank and file fire

1. *See generally Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979) (government has no constitutional duty to bargain collectively with an exclusive bargaining agent).

fighters of the Vicksburg Fire Department.

Under the resolution, in order to retain their present rank, thirteen captains of the Vicksburg Fire Department who belonged to Local 1686 were required to resign from that organization. The resolution, however, did not prohibit membership in the union by lesser-grade firefighters or preclude captains from joining any labor organization whose membership did not consist of rank-and-file firefighters of the Vicksburg Fire Department.

Following adoption of the resolution, the plaintiffs—consisting of Local 1686, firefighters in the Vicksburg Fire Department holding the rank of captain, and lieutenants who have passed their captain examinations but have not yet been promoted [2]—filed the instant action in the District Court for the Southern District of Mississippi pursuant to 42 U.S.C. §§ 1983 and 1985. Asserting that the resolution unconstitutionally infringed on first amendment and due process rights, the plaintiffs sought declaratory and injunctive relief as well as damages against the City of Vicksburg, its Mayor, and its Board of Aldermen. The district court ordered the resolution held in abeyance pending disposition of the case, and, after a two-day trial, upheld the resolution as a legitimate restriction on constitutional rights. Judgment was entered accordingly, and this appeal followed.

## II.

■ There can be no doubt that the City of Vicksburg's resolution forbidding captains from belonging to labor organizations comprised of rank-and-file firefighters implicates important first amendment protections. The first amendment's freedom of association provides both public and private employees the right to organize, solicit members for, and belong to labor unions. *See Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464–66, 99 S.Ct. 1826, 1827–28, 60 L.Ed.2d 360 (1979); *Thomas v. Collins,* 323 U.S. 516, 532, 65 S.Ct. 315, 319, 89 L.Ed. 430 (1945). These rights, however, are not absolute, especially with respect to public employees. While the government cannot condition public employment on the relinquishing of first amendment protection, *Perry v. Sindermann,* 408 U.S. 593, 596–98, 92 S.Ct. 2694, 2696–98, 33 L.Ed.2d 570 (1972); *Keyishian v. Board of Regents,* 385 U.S. 589, 605, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967), the government has legitimate interests as an employer in regulating the first amendment conduct of its employees that differ significantly from those it possesses in connection with the population in general. *See Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). "The problem is to balance the rights of the employees as citizens against the interests of the state in promoting efficient public service." *Battle v. Mulholland,* 439 F.2d 321, 324 (5th Cir.1971); *see also McBee v. Jim Hogg County,* 730 F.2d 1009 (5th Cir.1984) (en banc); *Bickel v. Burkhart,* 632 F.2d 1251, 1256 (5th Cir.1980). In order for an intrusion on associational rights to withstand judicial scrutiny, the government must show that the regulation serves a legitimate and substantial government interest and that the means employed are the least drastic restriction of constitutional rights. *Elrod v. Burns,* 427 U.S. 347, 363, 96 S.Ct. 2673, 2684, 49 L.Ed.2d

---

**2.** Two other allegedly interested entities not parties to this suit are the Mississippi Professional Firefighters' Association (MPFFA) and the Mississippi Firefighters Association (MFFA). According to the plaintiffs, the MPFFA is a labor organization representing rank-and-file firefighters from the Vicksburg Fire Department and other fire departments from across the State of Mississippi. The MFFA, also alleged to be a state-based labor organization, is comprised of local firefighter associations, the MPFFA, the Mississippi Fire Chiefs Association, the Mississippi Volunteer Firefighter's Association, and individual firefighters. The MFFA in the past has engaged in such activities as assisting in the professional training of firefighters across Mississippi and lobbying successfully for legislation providing for the education of the children of those firefighters disabled or killed in the line of duty.

547 (1976); *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960); *see generally Developments in the Law—Public Employment*, 97 Harv.L. Rev. 1611, 1678 (1984).

■ In holding that the City of Vicksburg's resolution was a legitimate limitation on the exercise of first amendment rights, the district court relied heavily on the case of *Local 2263, International Ass'n. of Fire Fighters v. City of Tupelo*, 439 F.Supp. 1224 (N.D.Miss.1977). *Tupelo* as well as two other cases—*York County Fire Fighters Ass'n., Local 2498 v. County of York*, 589 F.2d 775 (4th Cir.1978), and *Elk Grove Firefighters Local 2340 v. Willis*, 400 F.Supp. 1097 (N.D.Ill.1975), *aff'd mem.*, 539 F.2d 714 (7th Cir.1976)—concerned the constitutionality of municipal resolutions that were substantially identical to the one at bar.[3] We think these cases were correctly decided and accordingly adopt their reasoning. We hold that prohibiting firefighters properly characterized as supervisors from belonging to labor organizations composed of the rank and file serves a legitimate and substantial government interest in maintaining efficient and dependable firefighting services. "Management, like labor, must have faithful agents." *Beasley v. Food Fair of North Carolina, Inc.*, 416 U.S. 653, 660, 94 S.Ct. 2023, 2027, 40 L.Ed.2d 443 (1974) (quoting H.R.Rep. No. 245, 80th Cong., 1st Sess. 16 (1947)). An identity of interests on the part of supervisors with the rank and file poses a significant threat that the loyalties of the supervisors will be divided

and that consequently the discipline and effectiveness of the fire department will be impaired. Indeed, it is not difficult to imagine numerous instances in which the interests of the supervisors and those of the union would come into direct conflict, such as when the department determines that overtime is necessary to ensure the provision of effective fire protection services or when the union orders a picket, a work slow down, or a strike. In these cases, the supervisor cannot fulfill his obligation to both the city and the union, and the city's determination to spare itself the uncertain and perhaps dire consequences to persons and property of such a conflict of interest cannot be said to be constitutionally infirm. *Cf. Connick v. Myers, supra*, at 152, 103 S.Ct. at 1692 ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.").[4]

The plaintiffs do not appear to disagree with the basic proposition that government is entitled to the undivided allegiance of its supervisory personnel. Rather, they argue that for more specific reasons barring captains of the Vicksburg Fire Department from holding membership in a union representing rank-and-file firefighters does not significantly advance this government interest. First, the plaintiffs contend that, because the City of Vicksburg refuses to recognize Local 1686 or any other labor organization as the collective bargaining

3. See also *Key v. Rutherford*, 645 F.2d 880, 885 (10th Cir.1981) (remand for determination whether police chief's membership in "fraternal" organization conflicts with city's interest in an efficient police department); *Norbeck v. Davenport Community School Dist.*, 545 F.2d 63, 68 (8th Cir.1976) (holding that school district had legitimate interest in preventing school principal from being a bargaining agent for an association of teachers).

4. Our conclusion that government has a legitimate and substantial interest in prohibiting supervisors from joining a union composed of rank-and-file firefighters is bolstered by § 14(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 164(a), which excludes su-

pervisors from the protection afforded rank-and-file employees under the National Labor Relations Act. The purpose of § 14(a) is "to assure management of the undivided loyalty of its supervisory personnel by making sure that no employer would have to retain as its agent one who is obligated to the union." *NLRB v. Southern Plasma Corp.*, 626 F.2d 1287, 1299 (5th Cir.1980); *see also Florida Power & Light v. International Bhd. of Elec. Workers, Local 641*, 417 U.S. 790, 808, 94 S.Ct. 2737, 2746, 41 L.Ed.2d 477 (1974). The LMRA reflects a congressional judgment that the unionizing of supervisors threatens the overlapping goals of increasing productivity and promoting labor peace. *Beasley, supra*, at 661, 94 S.Ct. at 2028.

agent for the rank-and-file firefighters, the opportunity for conflict to arise between the needs of the City and the interests of the union is substantially reduced. Any remaining fear of conflict, the plaintiffs argue further, has been fully allayed by Local 1686's pledge that no captain will ever engage in a strike or work stoppage or hold union office if to do so would be inconsistent with the needs of the department. This argument is unpersuasive. Although Local 1686 is not the recognized agent for the employees, the union is still able to take an active role in promoting the employment-related interests of the rank and file, as the informational picketing conducted by union members in 1978 and 1980 demonstrates. Consequently, as the Fourth Circuit observed, "membership by supervisory personnel in a union to which the rank and file fire fighter also belongs has substantially the same potential disruptive effect, irrespective of whether the employer has statutory authority to bargain with the union or not." *York County Fire Fighters, supra,* at 778. Similarly, the pledge of the union, even if effective,[5]

would hardly be sufficient to dissipate the identity of interests union membership would foster between supervisors and the rank and file or guarantee to the City that discipline and efficiency in providing fire protection services will not be affected.

■ We also reject the plaintiffs' second contention that the resolution cuts too broad a swath through constitutionally protected freedoms.[6] As noted above, under the resolution, captains of the Vicksburg Fire Department are only prohibited from belonging to those unions that have rank-and-file firefighters in their membership. Captains therefore are not prevented from joining labor organizations whose membership does not consist of rank-and-file members of the Vicksburg Fire Department. In addition, while the resolution necessarily prevents captains from continuing to participate directly in the various charitable and professional activities conducted by the rank-and-file unions, captains are not precluded from engaging in such activities either on their own or through other unions. Moreover, nothing in the resolution would prevent a union comprised of captains and

5. Whether individual captains who are also members of Local 1686 would comply with the pledge in the event of a strike cannot, of course, be known with certainty. A portion of a deposition introduced into evidence at trial reveals the following exchange between defense counsel and a captain of the Vicksburg Fire Department:

Q. In the event of a strike by Local 1686 against the Board of Mayor and Aldermen of the City of Vicksburg, would you participate in that on behalf of the union?

A. It's a very difficult question to answer. I know that a strike by an fire fighter is illegal, an illegal act. And I can tell you categorically that I am opposed to a strike of any kind by anyone.

Q. Are you impliedly telling me then that in the event of a strike by the Local against the Board of Mayor and Aldermen of the City of Vicksburg, that you would not participate in it as a Captain and as a member of the Local?

A. I would be very—I would be hard-pressed, to be quite frank with you, hard-pressed to participate in a strike.

Q. Well, are you emphatically saying to me that you would not, or that you would?

A. I'm not saying either one because I don't know.

Q. You are not stating any decision about it?

A. It would have to be what it was for, it would have to be extremely—it would be a decision that I truly wouldn't want to have to make.

Q. So you can't answer the question?

A. No, sir, I can't answer that question.

Q. It would have to depend upon the circumstances that existed at the time the strike was being called? Is that what you are telling me?

A. Yes, sir.

Defendants' Exhibit D–7.

6. The plaintiffs appear to make this argument twice in their brief, at one point asserting that the resolution does not employ the least restrictive means to accomplish the government interest and later arguing that the resolution is "overbroad." *See* Appellants' Brief at 35, 38–40. Since the plaintiffs are not alleging "overbreadth" as a basis for standing, we view the two arguments as essentially the same. *See Secretary of State v. Joseph H. Munson Co.,* —— U.S. ——, 104 S.Ct. 2839, 2852 n. 13, 81 L.Ed.2d 786 (1984) (" 'Overbreadth' has also been used to describe a challenge to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest.").

other persons not including rank-and-file firefighters from working on charitable or other projects, such as conducting safety programs for the public or raising funds for medical research, in conjunction with the unions representing rank-and-file fire-fighters. For these reasons, we find the proscription on union activities, limited as it is, to be narrowly tailored to achieve the City of Vicksburg's legitimate ends. *See Tupelo, supra,* at 1231–32; *Elk Grove, supra,* at 1103.[7]

Finally, the plaintiffs argue at great length that captains of the Vicksburg Fire Department are not properly characterized as "supervisors," but are rather "crew leaders" who possess no actual supervisory authority. Consequently, it is contended, irrespective of the City's ability to restrict the union affiliations of higher-ranking officers of the Vicksburg Fire Department, the resolution's intrusion on the associational rights of captains does not effectively serve any legitimate government interest and is violative of the first amendment.

■ In concluding that captains of the Vicksburg Fire Department were supervisors, the district court relied heavily on the definition of that term in section 2(11) of the National Labor Relations Act, as amended, which provides:

> The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employ-

ees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). The functions of a supervisor listed in the statute are disjunctive; it need not be shown that an employee performed all or several of the functions to support a finding of supervisory status. *NLRB v. Dadco Fashions, Inc.,* 632 F.2d 493, 496 (5th Cir.1980); *Sweeney & Co. v. NLRB,* 437 F.2d 1127, 1131 (5th Cir.1971).

■ While the foregoing provision of the Act is of course not directly applicable in the public employment context, we agree with the district court that its definition of the term "supervisor" is a helpful guide in determining whether captains engage in the type of activity that would render their interests sufficiently adverse to those of the rank and file to warrant the prohibition against joining a common union. Certainly, if an employee regularly performs one of the functions delineated in the statute and, in so doing, exercises independent judgment in the interests of management, membership in a union comprised of the rank and file would result in a real possibility of a conflict of interest that would be inimical to efficient fire protection. Because the district court's conclusion that captains in the Vicksburg Fire Department qualify as supervisors under section 2(11) is a finding of fact,[8] we review it under the

---

**7.** The plaintiffs in addition allege that the resolution is impermissibly vague. The standard of unconstitutional vagueness is whether the terms of the law are so indefinite that "[persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Reeves v. McConn,* 631 F.2d 377, 383 (5th Cir. 1980). The operative portion of the City of Vicksburg's resolution states—we think quite explicitly—that "[i]ndividuals occupying the position of captain in the Vicksburg Fire Department will not be permitted to belong to a union or labor organization having as members rank-and-file fire fighters of the Vicksburg Fire Department." While the terms "union" and "labor organization" may possibly contain "germs of

uncertainty," *see Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973), we do not think that the directive is so imprecise that it fails to give fair warning of the prescribed conduct or that persons of reasonable understanding cannot comply with it without significant forfeiture of constitutionally protected rights.

**8.** *See, e.g., Berry Schools v. NLRB,* 627 F.2d 692, 697 (5th Cir.1980); *Dadco Fashions, Inc., supra,* at 496; *Sweeney & Co., supra,* at 1131; *cf. Cobb v. Finest Foods, Inc.,* 755 F.2d 1148, 1150–51 (5th Cir.1985) (holding that whether employee qualified under the executive or administrative exceptions of the Fair Labor Standards Act is primarily a question of fact).

clearly erroneous standard of Federal Rule of Civil Procedure 52(a). Under this standard, the district court's decision cannot be reversed unless a review of the entire evidence leaves us " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

 The record reveals the following.[9] In the Vicksburg Fire Department's chain of command, thirteen captains are superior officers to fifty-nine subordinates of whom fourteen are lieutenants and forty-five are privates. Captains in turn are subordinate to five assistant chiefs, who themselves are under the command of a deputy chief and the fire chief. Captains work directly with lieutenants and privates at each of the firehouses and in actually fighting fires. On fire runs outside city limits, although radio contact with the central station is maintained, the captain is usually solely in charge of the fire situation from the time the report of a fire is called into the station until the fire is extinguished. Upon arrival at the fire, the captain makes all determinations and decisions regarding the type of fire, whether inflammables are involved, appropriate safety-and-rescue measures, methods of extinguishment, and whether additional firefighting equipment and personnel are needed to assist. With respect to fires within city limits, the captain is in charge of the fire until the assistant chief arrives. Even then, however, the authority of the captain is not diminished; he continues to make decisions, working and placing subordinate personnel in positions appropriate to combatting fires. While not on fire runs, the captain is generally responsible for the cleanliness of his station and for the apparatus, tools, and other equipment stored therein. The captain also delegates station maintenance duties. Although the captain has no authority to hire, transfer, promote, discharge, or reward employees directly responsible to him, the captain is authorized to evaluate and file reports on subordinate personnel performance and to reprimand subordinate personnel in the absence of superior officers. In addition, the captain can temporarily suspend a lieutenant or a private for such infractions of the rules as intoxication or fighting. Upon return of the suspended employee, the captain recommends to his superior whether further suspension is necessary. All recommendations by the captain are subject to independent review.

While the question is a close one, based on the foregoing, the district court's finding that captains in the Vicksburg Fire Department engage in supervisory activities and do so in the interests of management is not clearly erroneous. The authority of the captain to suspend subordinates, albeit temporarily, and issue reprimands indicates that they perform a distinct disciplinary function over the rank-and-file firefighters in the department. Moreover, especially on fire runs outside city limits, the responsibility of the captain often is equivalent to that of the assistant chief. The district court could have reasonably determined that at these times, rather than being a mere conduit for management directives, the captain possesses plenary control over the activities of the other firefighters and must exercise independent judgment in the direction of firefighting operations. We think that sufficient evidence exists to support the court's findings and therefore uphold the determination that captains in the Vicksburg Fire Department were properly characterized as supervisors. We conclude that the City of Vicksburg's resolution was constitutionally adopted in furtherance of its legitimate concern over maintaining an effective and efficient fire department.

### III.

Because the City of Vicksburg's resolution does not impermissibly intrude upon

---

**9.** These facts were either uncontested at trial or expressly found by the district court and are not challenged on appeal.

first amendment freedoms, the judgment of the district court is affirmed.

AFFIRMED.

Alvin B. Rubin, Circuit Judge, concurred in part and dissented in part with opinion.