IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-7233

---

WILLIAM H. BODDIE,

                                        Plaintiff-Appellee
                                        Cross-Appellant,

                              versus

CITY OF COLUMBUS, MISSISSIPPI and
ROBERT W. GALE, Individually and in
his Official Capacity as Fire Chief
of the City of Columbus, Mississippi,

                                        Defendants-Appellants
                                        Cross-Appellees.

---

Appeals from the United States District Court
for the Northern District of Mississippi

---

(April 14, 1993)

Before Reynaldo G. GARZA, HIGGINBOTHAM, and Emilio M. GARZA,
Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

The City of Columbus and its fire chief, appeal from a
judgment entered upon a jury verdict finding them liable for firing
Boddie, a fireman, in violation of his First Amendment right to
associate with union members. The judgment awarded $30,558 against
the City and fire chief, individually, and ordered reinstatement.
Defendants argue that (1) Boddie's failure to prove that his
association with union members was a matter of public concern is
fatal to his claim, (2) the fire chief was entitled to qualified
immunity because of the then uncertainty of whether a showing of

public concern was required, (3) there was insufficient evidence to show that Boddie was fired for associating with union members, and (4) Boddie should not have been reinstated, because he falsified his employment application. Boddie also appeals, complaining about the effective date of his reinstatement. We affirm except we vacate the ordered date of reinstatement and remand with instructions that reinstatement be effective from the date of the jury verdict.

## I.

The Columbus, Mississippi Fire Department hired Bill Boddie in 1987, with a twelve-month probationary period. Eight hours before the end of his probation, Chief Gale fired Boddie. More specifically, the City Council accepted Gale's recommendation and fired Boddie.

In this suit, defendants learned that Boddie failed to disclose in his job application his previous work for Kirby Mitchell, who has been convicted on drug charges, and LBC Management Company, which produced adult films.

At trial, Gale contended that his recommendation to the City Council was based on Boddie's poor attitude. Boddie replied that this was pretext, that he was fired because he associated with firemen who were union members. The jury found that firing Boddie violated his right to freedom of association under the First Amendment and awarded Boddie $36,558.00, which the judge reduced to

2

$30,558.00.[1] Upon Boddie's motion, the judge ordered reinstatement effective April 3, 1992, the date he ruled on post-trial motions. The district court stayed Boddie's reinstatement and deferred a ruling on attorneys' fees pending this appeal.

## II.

The district court denied motions for directed verdict, JNOV, and new trial, ruling that Boddie's proof of associational activity need not include independent proof that it touched a matter of public concern. We agree. In Connick v. Meyers, 461 U.S. 138 (1983), the Supreme Court protected from employer discipline only the speech of employees touching on a matter of public concern. It pulled back from full protection for all speech in the workplace, sensitive to the reality that to do otherwise would elevate work-a-day personnel disputes to issues of a constitutional order. At the same time, the court explained that employees do not leave their free speech rights at home.

Defendants argue that this accommodating principle of public concern is a threshold hurdle to be cleared by all employees asserting First Amendment violation in the workplace. Its force aside, the answer to this question is not open for this panel. In Coughlin v. Lee, 946 F.2d 1152, 1158 (5th Cir. 1991), we stated that "[a] public employee's claim that he has been discharged for

---

[1] Boddie conceded that the verdict should be reduced to $30,708, the amount of lost wages he claimed. Defendants claimed that Boddie should pay for the turnout coat he lost while employed by the City, and the jury agreed. The coat was valued at $150. Therefore the court also reduced the award by this amount to reach $30,558.

his political affiliation in violation of his right to freely associate is not subject to the threshold public concern requirement." See also Kinsey v. Salado Independent School Dist., 950 F.2d 988, 992-93 (5th Cir. 1992) (en banc); Hatcher v. Board of Pub. Educ. and Orphanage, 809 F.2d 1546 (11th Cir. 1987); but see Griffin v. Thomas, 929 F.2d 1210 (7th Cir. 1991); Boals v. Gray, 775 F.2d 686 (6th Cir. 1985). Coughlin answers the City's contention regarding public concern.

## III.

Coughlin, decided four years after Boddie was fired, does not answer Chief Gale's contention to this court. Chief Gale argues that he has qualified immunity. Public officials are shielded from liability for damages under § 1983 so long as their conduct has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Anderson v. Creighton, 483 U.S. 635, 639 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "'[T]he question is not whether the law was settled, viewed abstractly, but whether, measured by an objective standard, a reasonable [official] would know that his action was illegal.'" Click v. Copeland, 970 F.2d 106, 109 (5th Cir. 1992) (quoting Matherne v. Wilson, 851 F.2d 752, 756 (5th Cir. 1988)).

Gale contends that in light of the split among the circuits on the question of whether public concern is an element of a freedom of association claim and the fact that we did not decide Coughlin until after Boddie's dismissal, he reasonably could not have been

4

expected to know that firing Boddie violated clearly established law.

We turn to the law at the time Gale made his recommendation to the City Council in December 1987.  Our inquiry ends, if we find from examining the decisions of the Supreme Court and our own decisions that the law was clearly established in this circuit. See Click, 970 F.2d at 110-11 (holding "[t]he law was established clearly enough in this circuit" despite a conflict with two other circuits) (emphasis added); see also Garcia by Garcia v. Miera, 817 F.2d 650, 658 (10th Cir. 1987) ("[t]o give preclusive effect to a conflict among the circuits would effectively bind this circuit by the decisions of others").

There is one preliminary issue.  Boddie argues that Chief Gale is not entitled to immunity, because Gale did not in fact believe that he could legally fire Boddie based on his union association. Rather, Gale has always maintained that he fired Boddie because of his poor attitude.  However, subjective good faith reliance on the allegedly illegal reason for discharge is not required.  See Pfannstiel v. City of Marion, 918 F.2d 1178, 1182 (5th Cir. 1990). We accept, as we must, the jury finding that Gale recommended that Boddie be fired because he associated with union members.

We are persuaded that in 1987 it was clear that the First Amendment protects an employee's right to associate with a union. Smith v. Arkansas State Highway Employees, 441 U.S. 463, 464-65 (1979); Vicksburg Firefighters v. City of Vicksburg, 761 F.2d 1036, 1039 (5th Cir. 1985); Professional Assoc'n of College Educators v.

5

El Paso County Community College Dist., 730 F.2d 258, 262 (5th Cir. 1984) (PACE); Tanner v. Hazlehurst Mun. Separate School Dist., 427 So. 2d 977, 978 (Miss. 1983); see also Shelton v. Tucker, 364 U.S. 479 (1960). It was also well-settled that a public employee's First Amendment rights yield at times to the government interest "in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968); see also Rankin v. McPherson, 107 S. Ct 2891, 2896 (1987); Connick, 461 U.S. at 150. Recognizing these competing interests, Connick held "that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. at 147.

Our view on the role of public concern in an association case was apparent before Coughlin. Connick and Pickering were speech cases. Connick fired an assistant district attorney for circulating a questionnaire concerning the office's transfer policy. 461 U.S. at 140-41. In Pickering, a teacher was fired for sending a letter to a newspaper critical of the school's handling of proposals to raise revenue. 391 U.S. at 564. Under Pickering and Connick, we balance the government's interest in an efficient workplace against the employee's First Amendment interest

considering a number of factors, if the speech was a public concern and not personal.

Gale's assertion that the law was not clearly established because the role of public concern was uncertain in a freedom of association case is belied by our post-Connick freedom of association decisions. In PACE, individual faculty members at El Paso Community College and the Professional Association of College Educators, PACE, alleged that the College tried to destroy PACE by threatening and intimidating their members and officers and by denying them privileges enjoyed by other faculty members. 730 F.2d at 261. We remanded for the district court to consider PACE's freedom of association claim stating:

> The first amendment protects the right of all persons to associate together in groups to further their lawful interests. This right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf. Thus, the first amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do. Such "protected First Amendment rights flow to unions as well as to their members and organizers."

Id. at 262 (quoting Allee v. Medrano, 416 U.S. 802, 819 n.13 (1974)) (footnotes omitted). Our opinion did not mention Connick or suggest any requirement that PACE offer some additional proof that it was involved in a public concern.

McBee v. Jim Hogg County, 730 F.2d 1009 (5th Cir. 1984) (en banc) was a political patronage case challenging the custom in Jim Hogg County of filling the position of deputy in the sheriff's office with political supporters of the newly elected sheriff. As

7

such, it implicated both speech and association. See also Kinsey, 950 F.2d at 992 (school board's dismissal of superintendent because of his support for defeated board members involved both freedom of speech and association). Only one of the plaintiffs, McBee, brought a pure speech claim. She was denied employment as a result of her complaint to the County Judge and to a County Commissioner about the sheriff's actions. McBee, 703 F.2d 834, 836-37 (original panel opinion). We took the case en banc to consider the effect of Connick, decided after the original panel opinion, on political patronage cases, settling on the Pickering balancing test as explained by Connick. Although we explained the facts of Connick and mentioned its holding with regard to the public concern test, the focus of our opinion was on Connick's explanation of the Pickering balance. 780 F.2d at 1013-14. We did not insist on a threshold finding of public concern. We remanded for the district court to consider the factors in the balancing test. Id. at 1017.

Vicksburg was another post-Connick freedom of association case that did not require public concern. Plaintiffs challenged a Vicksburg municipal resolution prohibiting captains of the Vicksburg Fire Department from belonging to a union or labor organization having in its membership rank-and-file firefighters of that department. 761 F.2d at 1037. We upheld the resolution, holding "that prohibiting firefighters properly characterized as supervisors from belonging to labor organizations composed of the rank and file serves legitimate and substantial government interest in maintaining efficient and dependable firefighting services."

8

<u>Id</u>. at 1040. Our decision rested solely on the balancing of interests.

We conclude that in December 1987, the law was clearly established in this circuit that no independent proof of public concern is required in a freedom of association claim arising from union organization activity. Without a hint to the contrary in our decisions, <u>Boals v. Gray</u>, 775 F.2d 686 (6th Cir. 1985), and <u>Griffin v. Thomas</u>, 929 F.2d 1210, 1213 (7th Cir. 1991), decided after Gale's decision, cannot support Gale's bid for qualified immunity.[2]

Although we think it apparent that public concern was not a prerequisite to a public employee's freedom to associate with union members, this does not end our inquiry. This is so whether we describe our law as not requiring independent proof that union activity of employees touches on a public concern or as recognizing the higher likelihood that much more of the range of such activity than the range of employee speech, is not solely personal and is inevitably of public concern. Many cases will defy this simplistic categorization with entangled speech and associational freedoms at issue. This is a price of the pushing away of workplace disputes but even this difficulty is eased by the countervailing reality that speech in the context of union activity will seldom be personal; most often it will be political speech. We escape this difficulty here because we have no more than associational

---

[2]<u>But see</u> <u>Hatcher v. Board of Public Educ. and Orphanage</u>, 809 F.2d 1546, 1558 (11th Cir. 1987) (holding that <u>Connick</u>'s public concern test does not apply to freedom of association, relying on <u>NAACP v. Alabama</u>, 357 U.S. 449 (1958)).

activity. Even so, the task that usually follows is not quite so easy.

The fact specific balancing test of <u>Pickering</u>, complicates the question of whether an act violated clear law. This is because the question is not only the clarity of the standard but its clarity in application. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987); <u>see also</u> <u>Noyola v. Texas Dept. of Human Resources</u>, 846 F.2d 1021, 1025 (5th Cir. 1988) ("[t]here will rarely be a basis for <u>a priori</u> judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights"). Here, however, Gale sought to justify Boddie's firing on the basis of poor attitude not disruption of the fire department. There was no interest to balance when this reason was rejected factually. "This assertion, while important for the question of causation, is fatal to his claim of qualified immunity." <u>Click</u>, 970 F.2d at 112. We conclude that Chief Gale should reasonably have known that firing Boddie for his association with union firemen violated clearly established law. The district court did not err in refusing qualified immunity.[3]

---

[3]Gale also asserts error in the district court's failure to give his requested jury instruction on qualified immunity. While it may be necessary for a jury to make findings related to qualified immunity in some cases, <u>see</u> <u>White v. Walker</u>, 950 F.2d 972, 976 (5th Cir. 1991), the issue in this case was purely legal. <u>See</u> <u>White v. Taylor</u>, 959 F.2d 539, 544 (5th Cir. 1992) ("[w]hether the conduct of which the plaintiff complains violated clearly established law is an essentially legal question) (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).

IV.

A.

We next address the sufficiency of the evidence that Boddie's association with union firemen was a substantial or motivating factor in Gale's decision. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). We must consider all of the evidence, drawing all reasonable inferences in favor of the prevailing party. We cannot disturb the verdict if the record contains any competent and substantial evidence tending fairly to support the verdict. E.g. Gibralter Sav. v. LDBrinkman Corp., 860 F.2d 1275, 1297 (5th Cir. 1988).

At trial, defendants attempted to convince the jury that Gale's recommendation was based on Boddie's poor attitude, relying on a few specific instances: Boddie lost his turnout coat and did not pay for the replacement coat (the jury determined that Boddie must pay for the coat), on several occasions Gale noticed Boddie out of uniform when he should have been in uniform, Boddie signed a petition concerning work hours after having worked only three months, and Boddie teased Chief Massey on a couple of occasions about what Massey was carrying in a briefcase.

Boddie argued that Gale's claim of poor attitude was a pretext. All firemen who worked on Boddie's shift, his immediate superior, and the assistant chief testified that Boddie was a very good firefighter and none were aware of an attitude problem. His immediate supervisor testified that Boddie's attitude was excellent. No other fireman had been fired without some

11

documentation of his poor performance, and no documentation existed on Boddie. Also, no other firefighter had ever been fired for a poor attitude.

According to the testimony, Boddie was a close friend of the officers of the local firefighters' union. To support his position that Gale fired him for union association, Boddie offered the testimony of City Councilman Edwards, Assistant Chief Lavender, admissions by Gale, and testimony from union officers. Edwards testified that Gale told him Boddie "hung out with the wrong crowd." Edwards assumed Gale was referring to the union. Lavender testified that Gale told him Boddie had been "messing with the union." Gale himself testified that it was his personal opinion that any union causes "turmoil." In addition, Gale told Union President Holloway that all the union was good for was "protecting worthless workers." On a different occasion, Gale told Holloway that it was not Holloway's job performance that was going to get him in trouble but his union activity and his signing of a petition. Similarly, Union Secretary Moore said Gale told him that his "extracurricular activity" was going to get him in trouble. Union Vice-President Latham testified that the union advised firemen not to join the union during their probationary period for fear of retaliation.

Defendants' attack on the verdict rests on many of the same witnesses. Gale and the City emphasize that these witnesses testified that they had never heard Gale say he was out to get Boddie, that firemen should not join the union, or that the union

12

could not solicit members. Gale and the City called other witnesses who also testified as to what they had never heard Gale say. A reasonable jury could conclude that union association was a substantial or motivating factor in Boddie's discharge.

B.

At oral argument, counsel for defendants argued that the City of Columbus could not be held liable because there was no proof that the members of the City Council held any anti-union bias. This argument strips to a first time contention that the City Council was the policymaker for the City of Columbus as to the hiring and firing of firemen and Boddie was required to prove the union animus of Council members to establish municipal liability. See City of St. Louis v. Praprotnik, 485 U.S. 112 (1988); Worsham v. City of Pasadena, 881 F.2d 1336 (5th Cir. 1989). Boddie's theory of recovery against the City was, however, that Chief Gale was a policymaker. Boddie's complaint alleged that Gale had the authority to make official policy decisions for the City with regard to the hiring and firing of firemen. The City never contended otherwise and the case was tried on this theory. The questions put to the jury were whether "Mr. Boddie's exercise of his protected First Amendment right of association was a substantial or motivating factors [sic] in the decision by the City and Chief Gale to discharge him" and whether "the actions of the City and Chief Gale were the proximate or legal cause of damages sustained by Mr. Boddie." The City Council was not mentioned in the instructions. We do not suggest that it would, in any event,

13

have succeeded, but it is too late for the City to raise this contention. See e.g. Capps v. Humble Oil & Refining Co., 536 F.2d 80 (5th Cir. 1976) (appellant may not raise on appeal a theory which was not presented to the trial court); Matter of Texas Mortgage Servs. Corp., 761 F.2d 1068, 1073 (5th Cir. 1985) ("issues not raised on appeal in the brief of the Appellant may be considered waived, and they cannot be noticed or entertained by the Court of Appeals").

## V.

Defendants argue that Boddie should not have been reinstated, because Boddie falsified his employment application by failing to list all of his former employers. Defendants never raised Boddie's application as a bar to reinstatement before the district court; they were silent on this issue at the pretrial conference and in their motion for summary judgment, and did not oppose Boddie's post-trial motion for reinstatement. Boddie's failure to include all of his former employers on his application was raised at trial only as an issue of Boddie's credibility. We decline to address this argument for the first time on appeal. See, e.g., McLean v. International Harvester Co., 902 F.2d 372, 374 (5th Cir. 1990).

## VI.

On cross-appeal, Boddie argues that the district court erred in failing to make reinstatement effective from the date of the jury verdict, and we agree. The jury returned its verdict on September 5, 1991. The judgment awarded Boddie $30,558, the amount of backpay he claimed less $150 for the coat. Therefore, the

14

judgment compensated Boddie for his loss of income up until trial. However, reinstatement was not effective until April 3, 1992, the date the judge ruled on post-trial motions. Thus, Boddie has not been fully compensated for his loss; the period between trial and the judge's ruling on post-trial motions was uncompensated. <u>Cf</u>. <u>Kingsville Independent School Dist. v. Cooper</u>, 611 F.2d 1109, 1114 (5th Cir. 1980) ("the usual award of backpay covers the period from wrongful termination to effective reinstatement"). Accordingly, we affirm the judgment in all respects except the effective date of reinstatement. We vacate that portion of the judgment and remand with instructions to order reinstatement effective September 5, 1991.

AFFIRMED in part, VACATED and REMANDED in part.