**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 98-60335

JAMES MAZE,

Plaintiff-Appellee,

versus

EDWARD HARGETT, Superintendent,
Mississippi State Penitentiary; ROGER COOK;
ROBERT ARMSTRONG; OLIVAR JONES

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi
(4:94-CV-211-D-A)

October 27, 1999

Before KING, Chief Judge, STEWART, Circuit Judge, and ROSENTHAL[*], District Judge

PER CURIAM:[**]

Prison officials at Mississippi State Penitentiary at Parchman, Mississippi ("Parchman") appeal

from the district court's final judgment and order. The district court ruled that prison officials

violated 42 U.S.C. § 1983 when officials denied inmate James Maze ("Maze") the ability to exercise

outdoors five hours per week, thus depriving Maze of his Eighth Amendment right against cruel and

unusual punishment. Furthermore, the prison officials claim that the district court erred when it

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th CIR. R 47.5.4.

rejected their affirmative defense of qualified immunity, and awarded nominal damages of $1 and granted injunctive relief. For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Maze entered the maximum security unit at Parchman in September 1990. Because of the nature of his offense, child molestation, Maze was classified as "C" custody and was placed in protective custody/administrative segregation in Unit 32-B. Maze has been in protective custody since 1990. He was on lock-down status except for library call, sick call, or yard call. He was sentenced to 120 years in prison and will have to remain in protective custody for the duration of his sentence. Maze filed this §1983 action alleging that prison officials denied him access to outdoor exercise.[1] A magistrate judge conducted a bench trial on January 30, 1996. Maze presented evidence, however, the prison officials did not present a case-in-chief.

Maze called six witnesses.[2] The evidence demonstrated that Unit 32-B and 32-D shared exercise yards and thus operated on a "3/2" system. During one week, inmates from Unit 32-B would use the yard on Monday, Wednesday, and Friday. Inmates from Unit 32-D would use the yard on Tuesday and Thursday. The next week, the units would switch days. Maze's opportunity to exercise decreased by one-half. Sometime during Maze's incarceration, a determination was made to split the time for outside exercise by Unit 32-B inmates into two groups; thus decreasing Maze's outdoor exercise opportunities in-half again.

---

[1] See MDOC Policy and Procedure No. 08.06.3 effective June 13, 1993. This regulation states that exercise periods shall be available for one hour per day, five days per week. The exercise shall be "outside the cells" unless security or safety considerations dictate otherwise.

[2] These witnesses included fellow inmates, and defendants, Olivar Jones, Robert Armstrong and Edward Hargett. The magistrate dismissed Maze's claims against defendant Stewart Murphy.

Maze argued that under the MDOC he is entitled to be granted five hours per week outside his cell, and that he is entitled to have a reasonable amount of time outdoors rather than in one of the two day rooms located within Unit 32-B. The magistrate found that as matter of course Maze was permitted outside of his cell for one hour on an average of four times a week.

Maze and the other inmate witnesses testified that it is easier for the guards to take them to the day room during yard call instead of outside, because outside yard call requires that a guard supervise the inmates at all times. Dimensions of the day room were estimated between 16' x 20' to 20' x 20', and there were normally twelve to fourteen people in the room at a time. Only four to eight people could sit down in the room at a time. The room contained no games or activities and many of the prisoners smoked, thus depriving the other inmates of fresh air.

The magistrate judge concluded that Maze's complaint was not centered around being allowed out of his cell for one hour five days a week; but instead, his complaint was that he was not allowed to have outdoor yard call. Maze claimed that he was being deprived of the fresh air and sunshine necessary to keep him both physically and mentally healthy.

Maze testified that in the day room he would walk backwards, think, pray, and sing. He claimed that his restricted movements have caused his physical condition to deteriorate. Also, Maze claimed that his feet swelled when he was unable to go outside. Prison officials offered no affirmative evidence to contradict Maze's claims of physical deterioration.

Based on Maze's testimony, the records he kept in 1993, and MDOC isolation/segregation records kept during 1995, the magistrate concluded that Maze had a total of twelve days outdoor exercise in 1993 and twenty days in 1995, fourteen of those days coming after his case was set for trial.

3

The magistrate judge concluded that "Maze [was] being subjected to additional punishment in being denied sufficient outdoor exercise to maintain his physical health, and psychological well-being" all in violation of the Eighth Amendment of the United States Constitution.

After a de novo review of the record, the district court on April 24, 1998 adopted the magistrate judge's findings of fact and law. The court concluded that the only exercise opportunity outside of Maze's cell was in a "smoke-filled, crowded day room whose dimensions lie[d] somewhere between 16' x 20' and 20' x 30'." Based upon this fact, and in light of the length of Maze's sentence and the amount of time spent in his cell daily, the court found that prison officials violated Maze's Eighth Amendment right against cruel and unusual punishment by depriving him of an adequate opportunity for exercise.

STANDARD OF REVIEW

On appeal from a bench trial this court reviews the district court's factual findings for clear error and its conclusions of law de novo. FED. R. CIV. P. 52(a); Odom v. Frank, 3 F.3d 839, 843 (5th Cir. 1993). A trial court's findings of fact are accepted unless clearly erroneous or grounded on an erroneous view of the law, or an incorrect legal standard. See Pullman-Standard v. Swint, 456 U.S. 273, 289, 102 S.Ct. 1781, 1789-90, 72 L.Ed.2d 66 (1982); see also Branch-Hines v. Hebert, 939 F.2d 1311, 1320 (5th Cir.1991). Where there exists two permissible views of the evidence, a fact finder's choice between them cannot be clearly erroneous, even if the reviewing court would have weighed the evidence differently. Branch-Hines v. Hebert, 939 F.2d at 1321. Thus, a finding of fact is clearly erroneous only if the reviewing court, after reviewing the entire record, is convinced that the trial court made a mistake. Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc., 951 F.2d 684,

4

693 (5th Cir.1992). Questions of law, however, are reviewed de novo. Branch-Hines v. Hebert, 939 F.2d at 1320.

DISCUSSION

Eight Amendment Violation

Defendants argue that the district court erred in finding that they violated Maze's Eighth Amendment right. Specifically, they contend that the district court erred in finding that Maze's continuous lack of outdoor exercise posed a "sufficiently imminent danger of significant harm" during the tenure of his sentence. For the following reasons we affirm the district court and conclude that Maze's Eighth Amendment right was violated.

A prison official violates the Eighth Amendment prohibition against cruel and unusual punishment when two requirements are met. First, the objective component requires that the alleged deprivation be "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); see also Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). This objective component is contextual and should be responsive to contemporary standards of decency; in prison conditions cases the deprivation must be of an extreme nature that results in the denial of the prisoner's most minimal life necessities. See Farmer, 511 U.S. at 834, 114 S.Ct. at 1977; Hudson v. McMillan, 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d11 (1992).

The second requirement necessary to demonstrate a violation of the Eighth Amendment is that prison officials must have a sufficiently culpable state of mind, specifically, that the prison officials be deliberately indifferent to an inmate's health and safety. See Farmer, 511 U.S. at 834, 114 S.Ct.

5

at 1977. A prison official is considered to be deliberately indifferent when the official knows of and disregards an "excessive risk" to an inmate's health and safety. Id. at 837, 114 S.Ct. at 1979.

Neither the Supreme Court nor this court have specifically held that prisoners enjoy an absolute right to outdoor exercise. See Green v. Ferrel, 801 F.2d 765, 771-72 (5th Cir. 1986). However, we have held that while deprivation of exercise itself is not per se cruel and unusual punishment, confinement for long periods of time without any exercise may constitute cruel and unusual punishment. See Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir. 1982), modified, 688 F.2d 266 (5th Cir. 1982). While the district court acknowledged that Maze's complaint was ultimately about being deprived of outdoor exercise opportunities, this court has recognized that the absence of outdoor exercise opportunities may constitute an Eighth Amendment violation. See Montana v. Commissioner's Court , 659 F.2d 19, 22 (5th Cir. Unit A 1981); McGruder v. Phelps, 608 F.2d 1023, 1025 (5th Cir. 1979). In considering whether an inmate's need for regular exercise has been met, the factors to consider are: (1) the size of the inmate's cell, (2) the amount of time the inmate spends locked in his cell each day, and (3) the overall length of his confinement. Ruiz, 679 F.2d at 1152.

The district court properly considered these factors and determined that Maze was being denied an adequate opportunity to exercise. The district court made the following factual findings. Maze has been in protective custody since 1990. He is on lock down status except for library call, sick call, or yard call and spends approximately twenty-three hours in his cell daily. He is sentenced to 120 years, and will have to remain in protective custody for the duration of his sentence. In 1993, Maze was allowed only twelve days of outdoor exercise and a total of twenty days of outdoor

6

exercise in 1995.[3] The prisoners were taken out of their cells to the indoor day room four to five days a week. There were twelve or fourteen people in the day room. Also, there were no games or activities, and many of the inmates smoked which deprived the others of fresh air. The district court concluded that virtually the only exercise opportunity Maze had was in this crowded smoke-filled day room with estimated dimensions between 16' x 20' and 20' x 30'.[4] Our review of the record confirms that the prison officials offered no contradictory evidence regarding Maze's opportunity to exercise. Without contradictory evidence we will not disturb the district court's factual findings. See Branch-Hines, 939 F.2d at 1320. Therefore, we conclude that based on the Ruiz factors, Maze was denied an adequate opportunity to exercise.[5]

The second requirement that must be met to demonstrate an Eighth Amendment violation is to show that the prison official's state of mind was one of "deliberate indifference" to the inmate's health and safety. See Farmer, 511 U.S. at 834, 114 S.Ct. at 1977; Wilson, 501 U.S. at 302, 111 S.Ct. at 2325; Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998). A prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an "excessive risk" to inmate health or safety. Farmer, 511 U.S. at 837, 114 S.Ct. at 1979; See also Stewart v.

_____

[3] These findings were based on the Maze's testimony, his records kept during a similar state court action in 1993, and MDOC isolation/segregation records kept in 1995. Maze previously brought suit in the Circuit Court of Sunflower County, Mississippi in 1993 making identical claims.

[4] In contrast the estimated dimensions of the yard are 100' x 60', with small yard pens built inside the larger space.

[5] Although at first glance, our conclusion appears to contradict Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)(constitutional minimums were satisfied where an inmate was denied outside exercise for six years, but was allowed outside of his cell one hour daily) Wilkerson is factually distinguishable. In Wilkerson, the inmate was allowed to walk indoors on a thirty-yard tier which was lined with windows allowing the inmate sunshine and fresh air. See 703 F.2d at 911. In the present case, Maze's cell and the small crowed smoked-filled day room did not allow sunshine and fresh air.

7

Murphy, 174 F.3d 530, 533 (5th Cir. 1999); Downey v. Denton County, 119 F.3d 381, 388 (5th Cir. 1997). The prison officials argue that they were not deliberately indifferent to a serious threat to Maze's health or safety, because the lack of exercise presented no actual threat to Maze's health. To support this contention, the prison officials point to the district court finding that Maze suffered no serious or significant injury from the denial of adequate exercise opportunities.

However, the district court also found that if prison officials continued to deny Maze adequate exercise for the remainder of his sentence, Maze would suffer significant physical harm. Prisoners may obtain relief for prison conditions that are not currently harmful, but do pose a substantial risk of serious injury or illness in the future. See Farmer, 511 U.S. at 845, 114 S.Ct. at 1983; Hellig v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 12d L.Ed.2d 22 (1993) (stating that it would be odd to deny relief to inmates who have proven an unsafe condition in their prison on the ground that nothing yet has happened to them). Deliberate indifference is demonstrated by proving that the prison official knew of the substantial risk of serious harm to the inmate. Whether a prison official had the requisite knowledge of a substantial risk to the prisoner is a question of fact. Farmer, 511 U.S. at 842, 114 S.Ct. at 1981; see also Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

The district court found that the defendants knew of the substantial risk of serious harm to Maze from a lack of adequate exercise and responded to that risk of harm with deliberate indifference. Because this is a finding of fact, it should not be disturbed unless it is clearly erroneous. Thus, even if a reviewing court would have weighed the evidence differently and reached a contrary conclusion, a trial court's finding of fact shall not be disturbed unless it is unsupported by the evidence. See Brach-Hines, 939 F.2d at 1321. Prison officials Edward Hargett and Oliver Jones also admitted that they received complaints from Maze regarding his lack of outside yard call.

8

Furthermore, a Mississippi state court judge in a civil action filed by Maze had ordered prison officials to provide inmates in 32-B regular opportunities for outdoor exercise. Yet, despite the court's order and Maze's complaints, prison officials continued to deny Maze the opportunity for adequate exercise. Therefore, we conclude that there was sufficient evidence to support the district court's finding that prison officials were deliberately indifferent to Maze's lack of adequate opportunity to exercise. Based on the above conclusions, we affirm the district court's holding that Maze's Eighth Amendment right was violated by the prison officials.

Qualified Immunity

Next, we determine whether the prison officials are entitled to qualified immunity. The doctrine of qualified immunity shields an official performing discretionary functions from civil damages liability, provided the official's actions meet the test of "objective legal reasonableness." Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982); Petta v. Rivera, 143 F.3d 895, 899 (5th Cir. 1998) (per curiam). In other words, public officials are shielded from liability for civil damages as long as their conduct does not violate clearly established statutory and constitutional rights of which a reasonable person would have known. See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Davis v. Scherer, 468 U.S. 183, 194 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); Boddie v. City of Columbus, Miss., 989 F.2d 745, 747 (1993).

Courts must carefully identify the "clearly established law" at the proper level of generality so that the defense of qualified immunity will serve its intended purpose, i.e., to allow officers "reasonably [to] anticipate when their conduct may give rise to liability for damages." Petta, 143 F.3d at 899 (quoting Anderson v. Creighton, 483 U.S. at 689-40, 107 S.Ct. at 3039) Thus, for a

9

right to be clearly established, we require that its "contours . . . must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. Decisions of the Supreme Court and the Fifth Circuit determine whether a law was clearly established. See, Boddie 989 F.2d at 748 (citations omitted).

Defendant prison officials argue that the district court erred when it rejected their affirmative defense of qualified immunity because Maze failed to articulate a clearly established constitutional right. However, we disagree. Deprivation of an inmate's basic human needs violates the Eighth Amendment. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2127, 115 L.Ed.2d 271 (1991). "[I]nmates require regular exercise to maintain reasonably good physical and psychological health." Ruiz, 679 F.2d at 1152. Although an inmate does not enjoy an absolute right to outdoor exercise or recreation, we have recognized that an extended deprivation of exercise opportunities, whether outdoors or indoors, may violate an inmate's rights not to be subjected to cruel and unusual punishment. See Green, 801 F.2d at 771-72; Ruiz, 679 F.2d at 1152. Furthermore, in Ruiz, we observed that "courts have held that confinement of inmates for long periods of time without opportunity for regular physical exercise constitutes cruel and unusual punishment." 679 F.2d at 1152 (citations omitted). Thus, under Ruiz and Green, inmates confined in small quarters during the majority of their extended sentences enjoy a right to adequate exercise and recreation.[6]

---

[6] When reviewing a claim of qualified immunity, we determine not only the current applicable law, but whether the law was clearly established at the time an action occurred. See Petta, 143 F.3d at 900, n. 4; Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993): Mouille v. City of Live Oak, 918 F.2d 548, 551 (5th Cir.1990). "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could be fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. Ruiz and Green were decided before Maze's incarceration and have remained undisturbed by subsequent precedent.

The district court made a factual finding that the outdoor facilities provided the only adequate means for exercise because the indoor facilities were insufficient. A careful review of the bench trial transcript reveals that there was evidence to support the district court's finding that the outdoor facilities afforded the only adequate means for recreation and exercise.[7] Accordingly, we cannot say that the district court's finding of fact was clearly erroneous. See Branch-Hines, 939 F.2d at 3121. Therefore, because the defendants deprived Maze of sufficient access to the only adequate facilities for recreation and exercise, they violated Maze's clearly established constitutional right.

Once we determine that a clearly established constitutional or statutory right has been violated, we next address whether the official acted reasonably under settled law in the circumstances with which the official was confronted. See Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); William v. Bramer, 680 F.3d 699, 702 (5th Cir. 1999) ("[i]f we find that a constitutional right has been violated, our second inquiry is whether the governmental officials' actions were objectively reasonable"); Jones v. Collins, 132 F.3d 1048, 1052 (5th Cir.1998)("even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable); Lampkin v. City of Nacogdoches, 7 F.3d 430 (5th Cir. 1993). This inquiry is conducted without regard for the prison officials' actual state of mind or subjective motivations. Instead, the court attempts to put itself "in the shoes of a reasonable [prison official] as he or she approaches a given situation and assesses the likelihood of danger in a particular context ." Fontenot v. Cormier, 56 F.3d 669, 673 (1995); United

---

[7] Evidence adduced at trial indicated that the "day room" in which Maze was permitted one hour per day was 20' x 20', and was usually populated with at least twelve people at any given time. The district court noted that each person would only have approximately 5' x 10' area in which to exercise. Also, testimony from inmates that the day room was smoke-filled went unchallenged by defendants.

11

States v. Rideau, 969 F.2d 1572, 1574 (5th Cir.1992) (en banc). Objective reasonableness is a matter of law for the courts to decide, see Williams, 180 F.3d at 703, which we review de novo. See Odom, 3 F.3d at 843.

Policy 08.17 of the Mississippi Department of Corrections (the "Policy") was introduced into evidence at the bench trial. The Policy provides guidelines for "close confinement."[8] Regarding exercise, the Policy states:

> Exercise periods shall be available for a minimum of one (1) hour per day, five (5) days a week. This exercise shall be <u>outside the cell</u>, unless security or safety considerations dictate otherwise

(Emphasis added). Testimony from prison officials indicates that they relied on the express language in the Policy to justify their actions because the Policy on its face merely requires exercise outside the cell, not outdoors.[9] Nevertheless, defendants' apparent <u>reliance</u> on the policy is not dispositive. In

---

[8] Under Policy 08.17, "close confinement" is a classification status requiring close supervision and continual security control.

[9] The following exchange took place between Maze and Captain Jones:

Q.   MAZE: You're speaking about – you're willing to certify Captain Jones, that while you were captain of 32-B building, testifying under oath, that all the inmates when they asked for recreation were given under MDOC 32 8 point 17 plan Monday, Wednesday, Friday one week, Tuesday, Thursday of the next week, you're testifying that all inmates that wanted that got it when you were there for six months?

A.   CAPTAIN JONES: You either – the policy, as I recall, states that you have an hour out of your cell. It didn't say, "Take you out on the yard." We have recreation inside. We can put you there set hours a day, so it. It really didn't specify you had to go outside for each time, but I believe –

(Tr. Vol III, at 25). Also, during cross-examination conducted by counsel for the defendants, Officer Armstrong acknowledged that the Policy did not specify whether they were to provide inmates outside recreation and exercise. (Tr. Vol. III, at 56)

a state civil suit filed by Maze in 1993, approximately a year before his federal suit, a Mississippi state court judge adopted a magistrate's recommendation which stated that "MDOC follow the policy outlined in policy 08.17 and provide inmates housed at unit 32 some outside exercise weather permitting unless security and safety considerations dictate otherwise."[10] Despite the state court's order, prison officials continued to deprive Maze any adequate opportunity to exercise. MDOC records indicate that Maze received only thirteen days of outside exercise in 1993 and twenty days of outside exercise in 1995,[11] fourteen of which were allowed after prison officials learned that Maze's case was set for trial. Thus, in light of the state court's directive, the small and crowded smoked filled conditions of the indoor day room, and Maze's complaints to prison officials, we conclude that it was not objectively reasonable for prison officials to deny Maze adequate time for outdoor exercise. Therefore, we affirm the district court's ruling that the defendants were not entitled to qualified immunity.

Damages and Injunctive Relief

Compensatory damages awarded pursuant to § 1983 are governed by common law tort principles. Keyes v. Lauga, 635 F.2d 330, 336 (5th Cir.1981). Absent an error of law, the reviewing court will sustain the amount of damages awarded by the fact finder, unless the amount is clearly erroneous or so gross or inadequate as to be contrary to right reason. Thompkins v. Belt, 828 F.2d 298, 301 (5th Cir.1987). The district court found that Maze failed to demonstrate that he suffered

---

[10] See Order Adopting Finding and Recommendation of Judgment, Misc. No. 93-3845

[11] The magistrate judge did not permit Maze to introduce MDOC records of outdoor recreation for 1994 because the records had his handwritten notes on them. However, the magistrate judge inferred from the 1993 and 1995 MDOC records that Maze's exercise pattern in 1994 was probably no different.

13

present physical injury.[12] The record is devoid of any medical evidence offered in support of Maze's claim. As such, the district court reduced the magistrate judge's compensatory damages award from $750 to a nominal award of $1. We find no error in the district court's award. See Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978) (nominal damages are permitted in a § 1983 action even without proof of actual injury); Brady v. Fort Bent County, 145 F.3d 691, 717 (5th Cir. 1998); Irby v. Sullivan, 737 F.2d 1418, 1433  n. 30 (5th Cir.1984).

Defendants also challenge the district court's order of injunctive relief. However, since the filing of the notice of appeal Maze has been permanently transferred to another correctional facility.[13] Accordingly, this issue has become moot.

Therefore, we affirm the district court's final order and judgment.

---

[12]  Maze merely complained that at one point his feet had swollen due to the lack of exercise outdoors.

[13] Maze was transferred to Wilkerson County Correctional Facility on January 8, 1998.