**REVISED, December 11, 2014**
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-41344

United States Court of Appeals
Fifth Circuit

**FILED**
December 9, 2014

Lyle W. Cayce
Clerk

THOMAS BURNSIDE,

     Plaintiff - Appellee

v.

JIM KAELIN, Individually,

     Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, HIGGINBOTHAM and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This interlocutory appeal arises from the denial of qualified immunity at the motion-to-dismiss stage.  Plaintiff Burnside, a deputy sheriff, filed this § 1983 action alleging that, because he did not support defendant-Sheriff Kaelin's re-election bid, he was punitively transferred, and later fired, for exercising his First-Amendment rights to engage in free speech and association.  Sheriff Kaelin appeals the district court's denial of his motion to dismiss Burnside's complaint based on qualified immunity.  We AFFIRM in part, REVERSE in part, and REMAND.

No. 13-41344

## I. Background

Because this appeal arises from the denial of a motion to dismiss, we review the alleged facts in the light most favorable to plaintiff Burnside. *Cf. Johnson v. Jones*, 515 U.S. 304 (1995) (noting the limited scope of our appellate jurisdiction over an interlocutory appeal from the denial of qualified immunity).

Plaintiff Burnside worked as a sergeant for the Nueces County Sheriff's Department ("the Department"). For many years, Burnside was assigned to the Department's patrol division. Burnside also served as chairman of a law enforcement political action committee ("PAC"). Burnside maintained his association with the PAC and the campaign separate and distinct from his employment with the Department.

In January 2012, Sheriff Kaelin was up for re-election in a contested race. Sometime in January 2012, defendant Kaelin approached Burnside while Burnside was on duty and told him that the PAC should support Kaelin's re-election bid. Burnside said that he would not treat Kaelin differently from any other candidate and that the PAC's members would vote on the endorsement free from outside pressure. A few days later, Sheriff Kaelin told Burnside that Kaelin would move him to jail duty if the PAC did not support Kaelin's candidacy.

Burnside personally supported Kaelin's opponent, and Kaelin knew this. Moreover, the PAC did not support or endorse Kaelin, a fact that was common knowledge by January 12, 2012.

Three weeks after the PAC failed to endorse Kaelin, Kaelin transferred Burnside from the Department's patrol division to the jail. The jail assignment was "an extremely less desirable position" than his patrol position. Sheriff

2

No. 13-41344

Kaelin and all those in Burnside's position understood Burnside's transfer to jail duty to be a demotion rather than a reassignment.

Burnside continued to work at the jail for more than a year. In March 2013, his employment was terminated because of the dissemination of a recording containing a threat from Sheriff Kaelin against another officer.

Based on these facts, Burnside filed this § 1983 action against the Sheriff's Department and Sheriff Kaelin (in his individual capacity). The complaint alleges that the defendants (the Sheriff and Sheriff's Department) violated Burnside's First-Amendment rights by retaliating against him after he exercised his speech and association rights. Without answering, both defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), with Kaelin asserting the defense of qualified immunity. The magistrate judge recommended denying those motions. Kaelin objected on several grounds. The district court overruled those objections, then summarily adopted the magistrate judge's recommendation.

Kaelin brings this interlocutory appeal challenging the denial of qualified immunity.[1]

## II. Legal Principles

Burnside bases his § 1983 claim on Kaelin's alleged violation of his First-Amendment speech and association rights. To establish a First-Amendment, free-speech retaliation claim under § 1983, a public employee must show that (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public

---

[1] We have appellate jurisdiction over this interlocutory appeal "only to the extent that [the denial of qualified immunity] turns on an issue of law." *Cf. Juarez v. Aguilar*, 666 F.3d 325, 331 (5th Cir. 2011) (stating rule in summary judgment context). We have no jurisdiction over arguments unrelated to the denial of qualified immunity or over factual disputes, so we do not address any such arguments from Kaelin's brief on appeal.

concern outweighed the defendant's interest in promoting workplace efficiency; and (4) her speech was a substantial or motivating factor in the defendant's adverse employment action. *DePree v. Saunders*, 588 F.3d 282, 286–87 (5th Cir. 2009); *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992); *see also West v. Atkins*, 487 U.S. 42, 48 (1988) (stating that a plaintiff must also show that the alleged constitutional deprivation was committed by a person acting under color of law). A First-Amendment, "association" claim has similar elements but requires "engagement in a constitutionally protected activity" (rather than speech) and omits the second element (i.e., that the protected act involve a matter of public concern). *See Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir. 1993).

Sheriff Kaelin asserts that he is entitled to qualified immunity. The basic steps of the qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show that (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc); *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) ("Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available.").

### III. Discussion

Burnside's complaint alleges First-Amendment violations for two separate events: (1) his transfer in 2012 and (2) the termination of his employment in 2013. Taking the alleged facts in plaintiff Burnside's favor, we hold that he has alleged a § 1983 claim concerning his 2012 transfer, but we further hold that he has failed to state a constitutional violation with respect to his 2013 termination.

## A. Transfer

With regard to Burnside's retaliatory transfer claim, Kaelin argues that the complaint fails to allege a First-Amendment violation because (1) the transfer was not an adverse employment action; (2) there is no causal link between Burnside's protected acts and the transfer; and (3) the complaint does not provide enough facts to perform the *Pickering*-balancing test. We address each argument in turn.

First, Kaelin argues that Burnside's transfer from the patrol division to the jail was not sufficiently "adverse." This Circuit has clearly established that that a retaliatory, demotion-like transfer may constitute an adverse employment action under 42 U.S.C. § 1983. *See, e.g.*, *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2001) ("A job transfer may qualify as an 'adverse employment action' for the purpose of a First Amendment retaliation claim under 42 U.S.C. § 1983, if the change makes the job 'objectively worse.'"); *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Transfers can constitute adverse employment actions if they are sufficiently punitive . . . or if the new job is markedly less prestigious and less interesting than the old one." (citations omitted)); *Click*, 970 F.2d at 110–11. A transfer can be adverse within the meaning of § 1983 "even without an accompanying cut in pay or other tangible benefits" if the transfer is objectively "equivalent to" one of the commonly accepted adverse actions (e.g., discharges, demotions, or reprimands). *Serna*, 244 F.3d at 483 (summarizing the then-current state of the law regarding transfers as "adverse employment actions"). For example, where two plaintiffs ran for sheriff against the defendant-incumbent, failed to unseat the incumbent sheriff, and were subsequently transferred by that sheriff from law enforcement positions to jail guards, we held that the jail-duty

transfers were "demotion-like" and, thus, adverse employment actions because the new jobs were less interesting, less prestigious, and provide less opportunity for promotion. *See Click*, 970 F.2d at 109–11.

Here, Sheriff Kaelin took Burnside off the streets and placed him in the jail. The complaint alleges that the transfer was "typically considered by all in [Burnside's] position to be . . . a demotion." Burnside alleged that Sheriff Kaelin himself viewed the transfer as a demotion. One reasonable inference is that Kaelin initiated the transfer to punish Burnside for not supporting Kaelin in the 2012 election. This inference is precisely the one we drew in *Click*, where we found a transfer from law enforcement to jail guard was objectively "demotion-like." 970 F.2d at 109–11. Given the facts and reasonable inferences drawn from Burnside's complaint, his transfer alleges an adverse employment action under 42 U.S.C. § 1983.

Next, Kaelin argues that the complaint does not allege sufficiently a causal link between Burnside's protected acts and the transfer. The alleged fact of the causal link is readily apparent for a fact-finder to see. Viewed in Burnside's favor, the complaint alleges that twice in January 2012, Kaelin told Burnside that the PAC should support Kaelin's re-election bid. During the second encounter, Kaelin threatened to transfer Burnside to jail duty if the PAC did not support Kaelin's candidacy. By mid-January, according to the allegations, it was common knowledge that the PAC did not support or endorse Kaelin, and Kaelin knew that Burnside personally supported Kaelin's opponent. Within three weeks, Kaelin followed through with his threat and transferred Burnside to the jail. These allegations are sufficient to allow a plausible inference that Kaelin knew of the non-endorsement before he initiated Burnside's transfer and that the non-endorsement caused the jail-duty transfer. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th

Cir. 2001) (stating that the protected conduct need only be a motivating factor in the adverse employment action).

Finally, Kaelin argues that the complaint does not provide sufficient facts to perform the *Pickering*-balancing test.[2]  In particular, Kaelin argues that the complaint does not provide facts sufficient to determine whether Burnside's membership and leadership role in the PAC outweighed the Department's interest in workplace efficiency.[3]  In stating a prima facie case at the motion-to-dismiss stage of a case, there is a rebuttable presumption that no balancing is required to state a claim.  *See Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 n.9 (5th Cir. 2000) (stating that the requirement to balance an employee's interest in his First-Amendment speech against the employer's interest in promoting workplace efficiency "implicates only the summary judgment [analysis], not [a Rule 12(b)(6)] analysis"), *abrogated in part by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The rebuttable presumption applies because reasonable inferences drawn from a complaint, obviously drafted by the aggrieved employee, will generally lead to a plausible conclusion that the employee's interest in commenting on matters of public concern outweighs the employer's interest in workplace efficiency. The presumption also adheres because a plaintiff-employee is not in a position to plead defensive reasons for its employment decisions.  Moreover, this presumption does not prejudice the employer because it may quickly overcome the presumption by invoking the procedure for resolving qualified-immunity disputes at the motion-to-dismiss stage.  *See Schultea v. Wood*, 47 F.3d 1427

---

[2] *Pickering v. Board of Educ.*, 391 U.S. 563 (1968).  This is sometimes referred to as *Pickering-Connick* balancing or *McBee-Pickering-Connick* balancing.  *See, e.g., Click*, 970 F.2d at 112.

[3] This argument addresses the third prong of Burnside's free-speech retaliation claim; it does not affect Burnside's association claim because that claim has no balancing-test requirement.

(5th Cir. 1995) (en banc) (setting forth a procedure—through the use of a Rule 7 reply—to resolve factual disputes in cases where qualified immunity applies). Here, Kaelin failed to invoke the *Shultea* procedure, and nothing in Burnside's complaint indicates that Burnside's interest in commenting on the election was surpassed by Kaelin's interest in workplace efficiency. Thus, the complaint's allegations are sufficient to survive Kaelin's motion to dismiss.

Given the facts and reasonable inferences drawn from Burnside's complaint, he has alleged a retaliatory, demotion-like transfer following the non-endorsement of Sheriff Kaelin in 2012, in violation of his First-Amendment right of free speech and association. And, the law is clearly established that such a retaliatory action, if proved, violates the First Amendment. Therefore, Kaelin is not entitled to qualified immunity at this motion-to-dismiss stage for the 2012 transfer.

**B. Termination**

As alleged in the complaint, Burnside's termination resulted from the dissemination of a tape recording that contained Sheriff Kaelin's threat against another officer. The complaint reveals no details about the recording, its dissemination, or Kaelin's purported threat. And, the complaint lacks allegations sufficient to allow any reasonable inferences about such details as might be required to state a prima facie case. Without some direct allegation or reasonable inference that Burnside was involved with the recording in some way, there can be no violation of Burnside's First-Amendment rights based on the recording because we are missing a critical element of the claim: some connection to a constitutionally protected act.

The only protected activities in Burnside's complaint occurred in January 2012, when Burnside and the PAC he chaired failed to endorse Kaelin. But that occurred more than thirteen months before his employment was

No. 13-41344

terminated in March 2013. The complaint alleges no other facts linking the two events. Without such facts, we cannot plausibly infer that the termination was causally related to Burnside's First-Amendment conduct. And, without a causal link between the termination and Burnside's protected activities, there can be no claim of a constitutional violation as a matter of law. Consequently, Kaelin is entitled to qualified immunity on Burnside's termination claim.

## IV.  Conclusion

For the reasons above, we REVERSE the district court's denial of qualified immunity as to the termination claim and AFFIRM the denial of qualified immunity as to the transfer claim. We REMAND for further proceedings consistent with this opinion.

REVERSED in part; AFFIRMED in part; and REMANDED.